As the court knows, this is the second appeal in this case that arises from the second of two final orders by the Trademark Trial and Appeal Board in a cancellation action in which the parties claim rights to the same surname mark, namely Galperti, for flanges, metal fittings, and forges. The first of the board's two opinions dismissed the petition for cancellation, and it did so despite Galperti, U.S.A.'s showing that Galperti, of Italy, had procured its registration through a false declaration under Section 2-F of the Land Act. So your view is we send it back for the board to do an analysis of the intent prong? I'm sorry, Your Honor? In your view, we send it back so that the board can do an analysis, which it has not yet done on the intent prong? Yes, Your Honor, we ask for that. The board has not yet addressed the question of scienter in either of its two opinions. Okay. I'm sorry. I thought, well, that seems like the right thing to do if we agree with you on your main argument. I thought your brief actually asked us to decide the intent standard. Your Honor, we believe that the evidence is— You think we could, but you're not going to press that? Well, Your Honor, as we have recently submitted on Monday in light of the board's new presidential opinion addressing the intent prong of the fraud analysis, we believe that it is equally appropriate for this court to remand to allow the board to address intent under that clarified test in the first instance. And, Your Honor, the showing in both the first appeal—the first proceeding before the board and the second included an admission by Galperdi-Italy's principal that, of her contemporary knowledge, that the magnitude of other entities' use of the Galperdi mark was many times greater than that of her own company. I'm sorry. Does that have anything to do with this falsity question, or does that bear on the intent question? Your Honor, it bears on both, but most immediately upon falsity. The evident issue is a representation under Section 2F of the Act that Galperdi-Italy enjoyed the substantially exclusive use of the Galperdi mark for the five years immediately preceding that declaration. And the case law is clear that other parties' use of the same mark properly plays a role in the inquiry into whether the representation— Let me ask you, I guess, just a couple of questions about that. As I understand it, you think that the board committed two errors. One was in disregarding third parties for lack of privity, and the second is what the board referred to as your failure to show proprietary rights, I think was the phrase at one point. Proprietary interests is a phrase at another. I want to ask you about that, this proprietary rights business. The statute, which the September 2007 response clearly intends to mirror, talks about substantially exclusive use as a mark. What is the law on whether other users of the same word have to be doing so as a mark? Your Honor, I can refer you to the case law of this circuit, and in particular the CCPA's opinion in Otto Roth v. Universal Foods. In this opinion, it expressly rejects that theory, and it expressly rejects the methodology applied by the board in this particular case because it holds that any use of a mark, a challenges mark, is relevant to the inquiry into whether a Section 2F declaration is false. Your Honor, it does so in very express terms. It holds that, it reaches that holding even if that use is, quote, in a descriptive manner or in the manner of a mark, unquote, and even if that use is subsequent to the applicant's own. And, Your Honor, we'll find that holding at 640 F. 2nd at 1320. And even more to the point, Your Honor, you'll find the same rule being applied by this court in N. Ray Boston Beer Company Limited Partnership in which this court affirmed the board's rejection of a Section 2F declaration with the observation that, quote, the examples of the use by others in its descriptive form support the board's conclusion that the mark had not acquired distinctiveness, unquote, and Your Honor, we'll find that holding at 198 F. 3rd at 1373. One other question, and this is, I guess, on the other basis, legal basis of the board's decision about third parties. What do you make of the fact that in our 2019 decision, we said that what the board should do is consider the significance of appellant's use, that is, Gilparte's USA? Your Honor, the same— And did the board think it did? Well, Your Honor, that observation comes after this board's interpretation of L. D. Kitchler in which it said when evaluating whether an applicant has had substantial exclusive use of the mark, we look to whether any use by a third party was significant or whether it was merely inconsequential. And so if the court holds in this case that only trademark uses matter for purposes of the substantial exclusivity analysis under Section 2F, it will, Your Honor, I believe, be the first tribunal to reach such a holding, and again, it is not a holding that would be consistent with this court's past case law. Now, Your Honor, with respect to substantial exclusivity, again, this is not the board's approach, which is to limit the analysis to trademark uses. It's not something that has firm doctrinal warnings in this court's decision, and again, Your Honor, we submit in any of the regional circuits as well. But we also think the board erred in equal measure by limiting its analysis to other uses that it believed were in privity or somehow inured to the benefit of Galperdi USA, and, Your Honor, this, too, is a requirement with no basis in this court's case law. Where is it that you think the board required a showing of privity? Your Honor, we'll find it towards the end of the board's second decision. I'm sorry, Your Honor, it's correct. On page 17 of the appendix, that's correct, Your Honor. It appears in the middle of the concluding paragraph. You know, because petitioners, the petitioning parties, were neither, or because the petitioner's affiliates, quote, were neither predecessors nor successors in interest, but rather affiliates, any common law use did not inure to petitioner's benefit. Now, it is certainly the case that even a single party's use may be sufficiently inconsistent with a claim of substantially exclusive use to render a Section 2F claim false. And, indeed, you'll find a great example of that in the CCPA's opinion in Roselux, in which you had more than one party, but the uses of the aggregate were far less than the party claiming substantially exclusive use. And here, Your Honor, in the aggregate, we have an admission against interest, a concession of contemporary knowledge, that the aggregate uses were greater than those of the applicant using the same basic name. This may be getting ahead of the game, even if we're sending it back, but what you were referring to just now was the statement by Ms. Kilperity that she knew that the Italian company was only one-fifth or a fourth the size of the U.S. companies? Yes, Your Honor. Is that right? Because that doesn't specifically refer to the extent of their uses of the word. Well, Your Honor, that observation, the testimony was directed at her awareness arising from a state court litigation in which only the party's use of gal party marks was at issue. So it wasn't litigation in which the scope of that use was somehow ancillary to the main issue in the case. It was the only issue in that case. And, Your Honor, that witness sat through two full days of a preliminary injunction hearing that focused on that. And so... But as I understand it, what you think we should do is to remand not just the intent question but also the falsity question to be assessed without the burden of the two legal errors that the board made? That is correct, Your Honor. And as a technical matter, we haven't asked for necessarily a remand on intent because the board, again, has yet to address that. But yes, Your Honor, that's correct. And again, Your Honor, with respect to the privity question, it is certainly the case that a single user's use can defeat a claim of substantial exclusivity. But it is far more common for a challenger to such a claim to put forward uses of the same or similar mark by unaffiliated parties. And, Your Honor, that is even a characteristic of what happened in the Kichler case. And in Kichler, it's apparent from the court's opinion that one of the uses of the issue was that of the primary challenger to the registration in the case. But there were two other uses, and those were apparently by unrelated third parties. And the court will find the same analysis, again, in Boston Beer, in which the opinion refers to uses of the same phrase by different brewers. In other words, by parties not affiliated with each other. And again, it has never been the case that this court or the board or any other tribunal has required a showing of privity or showing that all the uses at issue inert the benefit of the challenger for them to account, for them to count in the analysis. Right. On the theory that if I say I have substantially exclusive use, any other uses in toto would make that false if significant enough, and it doesn't matter whether there are 17 people using it or one person doing all the uses. It still makes my statement false if it in toto is significant. Your honor is correct, and your honor will find just that methodology in the auto wrath opinion. You're using your rebuttal time. Do you want to save it? I would like to save it. Thank you. All right. Let's hear from Mr. Strino. May it please the court. I'm Paolo Strino-Kibbins, and I'm arguing today on behalf of UP and Legal Verge SRL. In its 2019 decision, this court affirmed the board's finding that the additional act prior common law rights to support its allegation of priority and likely confusion on the section 2B of the Framework Act, and this court affirmed the board's decision that appellant had failed to rely on written in rights in support of its claims. However, this court remanded decision to the board for further deliberation on one single discrete issue, that is, whether in light of the 2009 decision in Kichler, appellants, not third parties, use of the Galberti mark, not trade name, was significant and consequential as so to render false a police declaration of substantial excuse use. There are obvious reasons why this court drafted the remand so gnarly and so precisely. Did we explicitly instruct the board to consider any use by a third party? You did not. This court did not, but there are obvious reasons why this court did not do that. At no point, at any stage of this proceedings, had appellant relied, not in its briefing, not in its extension motion practice, but more importantly, not in its operating pleadings, on any use other than appellant's. Would like, in that regard- I'm sorry that I'm not remembering the details. I looked into this a little bit, and I thought that I saw in the briefing before this court last time, reference, reliance on appellant and its affiliates. There is reference at some point after the board issued decisions already indicated and made a founding fact that appellant lacked proprietary interest in the mark, that appellant lacked any kind of legal relationship for the record. At that point, at that late stage, appellant had, at some point, referenced to these affiliated companies. But the operating pleadings in this matter are very clear. I invite the court to look through Appendix 189 and 196. This is the second amended petition to cancel that, again, illustrates the operating pleadings of appellant. There are two counts of fraud. The page three- What's the page? It should be Appendix 189 and on. It's the second amended petition for cancellation. The two fraudulent count starts at page three and then page four. On page four, I'd like to read a passage. Registrant did not obtain the right to use petitioner's wordmark Alberti through the litigation and, therefore, had no right to file the application or claim that he had substantial exclusive and continuous use of the mark. It doesn't talk about other parties, it talks about petitioner. Likewise, on the count three, paragraph 13, because registrant knowingly made a false material presentation of fact and so on, by stating under oath that he was the owner of the Galberti mark with full knowledge the petitioner was already using the mark in the United States for the same goods and services. In other words, this court drafted the remand so gnarly and so precisely because appellant had failed to rely on any rights by third parties, let alone its perpetrated alleged affiliated companies and predecessors in interest. This court should resist. I think I'm confused about this. On the remand, the record was not expanded, right? It was just the board deciding on the same record, answering the questions on the remand. That's correct. It's the same record. And the record that the board talked about in this opinion, and I don't remember the pre-2019, it must have included in this, included all sorts of stuff about these affiliates' third parties' use. That's correct. That's correct, Your Honor. If I may continue, not only did the board not commit legal error, because in our view, privity is an inherent requirement of the remand, the court should not have to restate a general principle with regard to the interplay between privity, third party use, and so on. However, and this was a key point in the previous decision, this court could not find supporting reasoning in the previous decision of the board to show an analysis in isolation of the evidence of appellants' affiliated companies' use. I think Judge Taranto, I'm not sure what your response is to Judge Taranto's query. My response is the record has not been expanded, however, in this new decision, the board is now devoting a significant amount of time to the analysis of the use, not only by appellant, but also by its appropriate affiliated companies. This is to say, the lack of proprietary ownership, the lack of privity by appellant, it's not the sole decisions of the board analysis. The board devoted approximately 30%, that is to say five pages in this new decision, to analyze in isolation evidence of appellants' use, also with regard to that alleged use that belonged to those additional companies. And I would like to point in that regard, your Honor's attention to Appendix 11, between Appendix 11 and Appendix 15. This contains, again, a significant amount of the reasoning of the board and addresses specifically evidence of use. And the board says, a brochure that was introduced through the position of sender was undated. It restates the general principle that appellant had failed to rely on trade name rights and analyze again those uses in isolation. Website not includes the word culprity. There were building and low signs that were illegible. Importantly, on page 13, in the beginning, the board analyzes invoices and related documents from Petitioner and Galberti SPA. The vast majority of invoices were issued under the trade name of Ficino, Nicola, Galberti and Figo SPA. This statement alone defeats the appellant's conjectural exercise for at least two reasons. It shows that the board has, in fact, considered those invoices bearing the name of its affiliated companies, alleged affiliated companies. And in addition to that, underlines that that's trade name use. It's not trademark use. And this is tellingly... I'm not... So the import... Okay. So you were telling us that the board did analyze the affiliates, it didn't exclude them as a legal matter, and they said that the evidence was insufficient to establish substantial use, even if you combine all of those uses? Is that... It is correct, Your Honor, and I'll show you where, in our view, that reasoning appears in the decision. In other words, the board's analysis is a multiple-pronged analysis. It discusses the fact that the appellant lacked privity. And as far as it lacks privity, again, the analysis shouldn't even extend to third-party uses because it's outside of the scope of the remand. But then, in an abundance of caution, analyzes also those documents. It doesn't exclude the documents of those affiliated companies. And on page 15, Your Honors, second paragraph, the board states, from the aforementioned documentary evidence, we are unable to conclude that petitioner engaged in significant common legal use of his pleaded guilty mark or variation, therefore, during the relevant time period. In other words, the board did not commit an illegal error. It faithfully followed the remand, stayed within the confines of this board remand, and yet, in an abundance of caution, analyzed also those evidence of alleged use, not just by appellants, but also by its appropriate affiliated parties. Well, I mean, it seems clear on page 15 that the board found that petitioner engaged in significant common law use of his pleaded guilty mark during the relevant time period. But where does it address the affiliates? Okay. Again, going back to page 13. So just to be clear, I mean, do you think if this case, if in this case, the parties had argued about petitioner's use and affiliates or third party use, do you think it would have been appropriate for us to remand only to look at appellant's use of the mark? Had they argued differently, this court would have had any right to remand on those third party use. However, on this record, appellant could have not prevailed. There is significant evidentiary deficiency throughout the proceeding. The website, the testimony of appellant's president failed to verify any of those documents other than stating their authenticity, but never to render any testimony thereof. The documents do not often show the mark Galberti, but show logos. And I can point exactly in the decision. Other documents do not show any form of customer-facing use of these documents, such as a certificate of quality assurance by Lloyd. I mean, even in combination, those documents, and even as the board did, considering those invoices, and that's a vast amount of invoices, all showing a name that is not Galberti. Even considering those invoices, the outcome doesn't change, and the board already considered for its decision. But in your brief here, you say, you argue that appellant never pled or otherwise alleged third party usage. He did not. So you're saying it never pled or alleged it, nonetheless, the board on remand analyzed it. Yes, essentially. And where is it that they conclude that, draw a conclusion with respect to, I see the discussion of individual pieces of evidence, but where, and I think this is what the chief was getting at, where is the conclusion with respect to those other pieces? On page 15, the board says, from the aforementioned documentary evidence, and the aforementioned documentary evidence has stated, includes plaintiff. Yes, but the problem is, they arguably misstate the analysis there in that same sentence. From the aforementioned documents, we are unable to conclude petitioner has engaged in significant common law use. If it's not limited to petitioner, but could be anyone. Petitioner failed to allege it was third party use, and there is a good reason for it. Just on that, so I think before I was saying, I vaguely recalled something in the brief last time, so it's actually in the joint appendix, 4419 and 4431, are pages from Galperti USA's brief to this court, and specifically talking about how he was well aware of the use of the Galperti mark, all caps, by appellant and one of appellant's affiliates, that's 4419, same thing on 4431. And the evidence clearly was put in last time, that's why we have a record full of- On the basis that all that prior use had been transferred to petitioner, it was petitioner's mark. That was the basis. In other words, petitioner maintained that it was its own use. Why either under our precedent, like the Otto case and the Boston Beer case, or under logic, I guess those are about the proprietary stuff, I'm sorry, it's the third party, why does it make any kind of logical sense to say that if I say I have substantially exclusive use, that the question of the falsity of that should turn on whether, let's say, the 1300 other separate people, both of them render my statement false? I agree, I agree with your honor. As a matter of general principle, it shouldn't matter, but it should be in the pleadings, it should be, appellant failed to argue. And again, I mean, we are coming to this appeal after there have been a number of claims, the only issue in appeal was petitioner's use of the mark, because petitioner alleged that its own use is capable of rendering false that declaration. So this court should, in our view, should resist the invitation of restating the general principle, because this is not what the case is. This appeal, it's on the record, it is based on the record, and regardless of privity, the board has already also, again, analyzed those documentary evidence and concluded for a number of reasons that those documentary evidence do not show significant use, for a variety of reasons. Again, because at some points they are illegible, other times they lack, they are hearsay and they lack corroborating testimony, other times they are essentially showing trade name use on which this court already affirmed the board's finding appellant did not rely on. So the insistence that the board made a general mistake on stating, again, the law when it comes to the interplay between privity, third-party use, and substantial exclusive use statements, we don't believe that that's what the board did. This decision, again, analyzed in isolation and then in combined form all those evidence. It did not make a distinction. In the end, in the conclusion section, in summarizing the background of the case and so on, the board, again, stated that it lacked proprietary interest, it lacked privity, and regardless, that evidence of use was not significant or consequential within the meaning of Kichler. Okay, thank you, Mr. Strino. Mr. Davis, you have some rebuttal time. Very briefly in rebuttal, the parties agree on what the operative pleading is in this case, and Respondent's Counsel has referred you to it. But in doing so, he has referred the court to a cause of action asserted in that petition for cancellation relating to the claim of ownership in the mark that is not involved at all in this appeal and wasn't even pursued in the first appeal. With respect to the language in the operative pleading that relates to the cause of action currently before the court, that cause of action contains the following sentence. I'm sorry, Your Honor, it begins at Appendix 189, and this is also quoted by the board at Appendix 4, if that's easier to get at. But that cause of action contains the following sentence, quote, the declaration fraudulently in— Just to orient you, this is Count 2, fraudulent registration, false declaration, starting on 192? Yes, Your Honor. Okay, and which paragraph under that are you now reading from? Your Honor, I can't refer you to the specific paragraph, I'm sorry. It's not very long, so— But it does read, the declaration fraudulently and knowingly misrepresented that Respondent had substantially exclusive and continuous use of the mark within the United States since 1965 with an intent to deceive. No reference in that sentence to other parties' uses. Flat out, no substantially exclusive use. And as we heard, Your Honor, it's correct that throughout these proceedings, Galperdi USA has put forward that use as evidence of non-substantially exclusive use. And it's also the case, Your Honor, that until the remand in this action, and you can see where Galperdi Italy is seizing upon some language in this court's opinion, it had not asserted that these uses were not relevant to the substantially exclusive use inquiry. Well, counsel, I certainly see the sentence on page 17 that you directed me to about privity, but I think Mr. Strino's argument is, yes, the board found they were not in privity, but the board also independently evaluated each of these pieces of evidence even though it was evidence of the affiliate, not the petitioner's use. And in each case, you can see the reasons why the board concluded that that evidence didn't demonstrate consequential use. So what is your response to that? How did the board fail to analyze the affiliate evidence? If I may respond, Your Honor, I see my time is up. Yes, please. It did so because the board expressly states in its conclusion that that use did not inure to the petitioner's benefit. But it went through each piece of evidence one by one and explained the flaws with regard to each piece of evidence individually. Which pieces of affiliate evidence do you think establish the consequential use? Your Honor, we believe they all do. And again, Your Honor, this is not a case in which the respondent itself has failed to evaluate that evidence. It's a case in which respondents' own principle acknowledge the magnitude of that use, and that's an issue that the board has yet to address. I guess I'm with the chief on this. I don't think you're responding to her question. If the board, for whatever reason, even if it thought it didn't have to under its view of the law, evaluated all of the evidence that was put forward with respect to these third-party use and said this doesn't do anything for us, this doesn't establish anything, it's insufficient, why doesn't that matter for our purposes here? Because it's inextricably linked to the board's legal proposition that it doesn't matter. How do we know that? I mean, is there anything you can point to in the board's opinion? I know we talked about the language 15 where it talks about it specifically just calls out the petitioner. But how do we know that? And 17 as well, Your Honor. Well, but you had to answer Judge Proffitt's question. I'll just give you one example, brochures and catalogs. You claim that is some of the affiliate evidence of consequential use. But what the board said about the brochures and catalogs is that the testimony presented by Mr. Sanders was woefully inadequate, that within this catalog Mr. Sanders didn't testify to its use, its distribution, the extent of circulation of the brochure, that basically there was a failure of proof on your end to demonstrate, yes, there was a brochure, but there was a failure of proof as to whether that brochure was circulated in any significant way. So the board didn't conclude it constituted consequential use because there was no evidence of its circulation. So that's an example of the affiliate evidence that you're saying the board didn't properly count. And I'm saying actually they did, and they concluded you didn't prove anything by it. Your Honor, all I can do is refer you back to the two doctrinal frameworks that the board adopted here. Do you have some answer to why brochures and catalogs amount to consequential use or why the board erred in concluding they didn't in light of the failure of proof on your end? Again, Your Honor, the applicant itself was aware of that use. And that's something that the board has yet to consider. Okay, thank you. Thank you. This case is taken under submission.